IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TANNERITE SPORTS, LLC and
DANIEL TANNER,

      Plaintiffs,

  v.

JERENT ENTERPRISES, LLC, dba
SONIC BOOM EXPLODING TARGETS,

      Defendant.

Case No. 6:15-cv-00180-AA
OPINION AND ORDER

---

Andrea D. Coit
Harrang Long Gary Rudnick, PC
360 East 10th Ave., Suite 300
Eugene, OR 97401

Kevin M. Drucker (pro hac vice)
David L. Cargille (pro hac vice)
Mendelsohn, Drucker, & Dunleavy, PC
1500 John F. Kennedy Blvd., Suite 312
Philadelphia, PA 19102
    Attorneys for Plaintiffs.

Joshua M. Wolf
Wolf Legal, LLC
17390 SW Rose Petal Lane #206
Beaverton, OR 97003

Page 1 - OPINION AND ORDER

Michael T. Hilgers (pro hac vice)
Mary Ann Novak (pro hac vice)
Gober Hilgers, PLLC
14301 FNB Parkways, Suite 100
Omaha, NE 68154
     Attorneys for Defendant.

AIKEN, Judge:

     Plaintiffs Tannerite Sports, LLC and Daniel Tanner move to
dismiss the Second Amended Answer, Affirmative Defenses, and
Counterclaims of defendant Jerent Enterprises, LLC, dba Sonic Boom
Exploding Targets pursuant to Fed. R. Civ. P. 12(b)(6). For the
reasons that follow, plaintiffs' motion is GRANTED in part and
DENIED in part.

## BACKGROUND

     This matter commenced when plaintiffs filed a complaint
against defendant alleging patent infringement of their "Tannerite"
brand binary targets under the Patent Act, 35 U.S.C. § 271.
Plaintiffs' patented binary exploding targets are touted as safe to
transport and store because the reactive chemicals (an oxidizer and
a catalyst) are packaged in separate containers which are not
combined until shortly before use. However, even when mixed, the
chemicals do not react with each other unless impacted with the
kinetic force of a center-fire rifle round. Because the rifle
targets explode on impact creating a loud boom and "smoke," they
are said to be popular at shooting ranges.

     Following plaintiffs' First Amended Complaint, defendant filed
an Answer, Affirmative Defenses, and Counterclaims on April 14,

Page 2 – OPINION AND ORDER

2015 (doc. 20). Thereafter, on July 17, 2015, defendant filed an Amended Answer including affirmative defenses and counterclaims (doc. 29). In response, plaintiffs filed a Motion to Dismiss defendant's counterclaims on August 10, 2015 (doc. 32). The Court granted in part and denied in part plaintiff's motion by Opinion and Order of October 6, 2015 ("O&O") (doc. 41). Defendant subsequently moved for leave to file a Second Amended Answer including Affirmative Defenses and Counterclaims, which plaintiffs opposed (docs. 45 & 47). On December 18, 2015, the Court granted defendant leave to file a Second Amended Answer (doc. 54). Defendant's Second Amended Answer, including affirmative defenses and counterclaims, was filed on December 25, 2015 ("Def.'s Sec. Am. Ans.") (doc. 55).

Plaintiffs now move for dismissal for failure to state a claim ("Pls.' Mot.") (doc. 56).

## STANDARD OF REVIEW

"Where a counterclaim 'fail(s) to state a claim upon which relief can be granted,' it must be dismissed." Unum Life Ins. Co. of Am. v. Martin, 2013 WL 3995005, *2 (D. Or. Aug. 1, 2013) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a counterclaim must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 129 (2009). The counterclaims are liberally construed in favor of the counter-

claimant and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681. Rather, to state a plausible claim for relief, the counterclaim "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

## DISCUSSION

Plaintiffs contend: (1) the instant motion to dismiss defendant's counterclaims is not precluded by the Court's O&O; (2) defendant's counterclaims should be dismissed for failure to state a claim; and (3) defendant's affirmative defenses are legally insufficient and should be dismissed.[1] Defendant opposes each of plaintiffs' contentions.

I. Validity of Plaintiffs' Instant Motion

A. *Direct and Indirect Non-Infringement*

Defendant originally presented two distinct non-infringement counterclaims; one regarding direct non-infringement, and another regarding indirect non-infringement. Def.'s Am. Ans. ¶¶ 80, 105-109

---

[1] Plaintiffs' motion does not contain any argument or request to dismiss defendant's Second Amended Answer, despite the motion's title. Accordingly, the Court does not rule on the provisions comprising defendant's Second Amended Answer. See Def.'s Sec. Am. Ans. ¶¶ 1-43.

(doc. 29). The Court's October 6, 2015 Order denied plaintiffs' motion to dismiss the direct non-infringement claim, and granted plaintiffs' motion to dismiss the indirect non-infringement claim. Currently before the court is Def.'s Sec. Am. Ans., which includes an amended non-infringement counterclaim which no longer distinguishes between direct and indirect non-infringement. See id. ¶ 80 (patents "are not infringed"), ¶ 107 ("[defendant] has not infringed . . . [and] does not infringe" the patents-in-suit).

Plaintiffs request the Court to determine (1) whether the Court's opinion granting defendant leave to amend precludes the current motion; (2) whether the Court's ruling regarding defendant's direct non-infringement counterclaim is valid notwithstanding the abrogation of Fed. R. Civ. P. 84 and Form 18; and (3) whether the Court should limit, clarify, or require further amendment of defendant's instant Counterclaims and Affirmative Defenses. Pls.' Reply Memorandum in Support of Mot. to Dismiss Def.'s Sec. Am. Ans., Defenses, and Counterclaims ("Pls.' Reply") (doc. 58) 1. Defendant responds that its instant counterclaims refer only to direct non-infringement; thus, plaintiffs' motion is redundant in requesting dismissal of defendant's indirect non-infringement counterclaim. Def. Jerent Enterprises, LLC's Response to Pls.' Mot. to Dismiss Def.'s Counterclaims ("Def.'s Resp.") (doc. 57) 30-31.

Turning to plaintiffs' third contention first, the Court is

satisfied by defendant's representation that its current counterclaims strictly involve direct non-infringement, because defendant has abandoned its prior request for declaratory relief relative to indirect non-infringement. See Def.'s Resp. 31 ("[t]he counterclaim . . . pertains to direct [non] infringement"). Nonetheless, in the interest of clarity, defendants must make the two-word clarification it proposes by attaching the "directly" modifier to the term "infringe[d]" in its counterclaim.

B. *Abrogation of Fed. R. Civ. P. 84 and Form 18*

The next issue is whether the Court's denial of plaintiffs' motion to dismiss defendant's direct non-infringement counterclaim stands, notwithstanding intervening changes to the Federal Rules of Civil Procedure ("Rules"). The amended Rules took effect on December 1, 2015. H.R. Doc. No. 114-33, at *2 (2015). The relevant change removed Rule 84, including its appendix, which contained Form 18. As discussed in the Court's prior O&O, Form 18 provided a model complaint for asserting claims of direct patent infringement which required a less detailed pleading than that contemplated in Twombly and Iqbal. Noting the Ninth Circuit had not addressed which pleading standard applied to infringement claims, the Court followed courts in the Eastern and Northern districts of California and applied the minimal pleading requirements of Form 18. See O&O at *5-6; Aubin Indus., Inc. v. Caster Concepts, Inc., 2015 WL 3914000, *3-5 (E.D. Cal. June 25, 2015); PageMelding, Inc. v. ESPN,

Page 6 — OPINION AND ORDER

Inc., 2012 WL 3877686, *2 (N.D. Cal. Sept. 6, 2012).[2] Accordingly, the Court found defendant's direct non-infringement claim met the legal threshold. O&O at *6-7.

Plaintiffs argue that with the removal of Form 18 from the Rules, both direct and indirect non-infringement claims are now subject to the heightened pleading standards described in Twombly

---

[2] The court acknowledges and agrees with plaintiffs' discussion regarding the United States Court of Appeals for the Federal Circuit's exclusive jurisdiction over appeals arising from district court patent cases. See Pls.' Reply 11-12; 28 U.S.C. § 1295. As plaintiffs accurately observe, although the Federal Circuit has long abdicated its jurisdiction over "purely procedural" issues, the regional circuit courts are jurisdictionally barred from hearing "purely procedural" patent issues based on the aforementioned exclusive jurisdiction of the Federal Circuit. Accordingly, the regional circuit courts cannot rule on procedural patent appeals, resulting in discontinuity in pleading standards across districts. See id.

However, plaintiffs also assert, "many practitioners believed that the removal of Form 18 would result in a uniform Iqbal/Twombly standard in all courts, and the initial cases that ruled on the new civil-procedure rules agreed." Pls.' Reply 12. Plaintiffs cite two cases; however, those cases do not fully support plaintiffs' assertion.

In In re CTP Innovations, LLC., U.S. Dist. LEXIS 135060 (D. Md. Oct. 2, 2015), there is no discussion of the effect of the abrogation of Rule 84 or Form 18. Instead, the only reference to abrogation in the case is located in footnotes 5 and 6, which merely state that Form 18 will be abrogated on December 1, 2015. Contrary to plaintiffs' averment, the court neither ruled on, nor expressed any opinion of, the abrogation.

Similarly, the court in Mayne Pharma Int'l Pty Ltd. v. Merck & Co., Inc., U.S. Dist. LEXIS 162912 (D.Del. Dec. 3, 2015) did not rule on the effect of the amended Rules. Rather, the court noted the imminent abrogation of Rule 84 and Form 18, explaining that subsequent direct infringement suits would be subject to the pleading standards of Twombly and Iqbal. However, absent argument from defendant regarding retroactivity, the court declined to further address the issue. See Mayne Pharma at *3 n.1.

and <u>Iqbal</u>. Accordingly, argue plaintiffs, this Court should apply the new Rules retroactively and require defendant to meet the more stringent pleading threshold.

Defendant disputes plaintiffs' arguments on two grounds. First, defendant asserts the rule change did not alter the pleading requirements for direct infringement, and so also did not change the requirements for direct non-infringement. In support, defendant invokes the Advisory Committee note associated with the abrogation notice, which states, "[t]he abrogation of Rule 84 does not alter existing pleading standards or otherwise change the requirements of Civil Rule 8." Fed. R. Civ. P. 84 (2015 Advisory Committee Note). However, this Court has already addressed the issue in its October order — to the extent there is conflict between Form 18 and <u>Twombly/Iqbal</u> pleading standards, Form 18 controls. <u>See, e.g.</u> <u>K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.</u>, 714 F.3d 1277, 1283-84 (Fed. Cir. 2013) (citations omitted); O&O at *5-6. In other words, while it is possible the Form 18 pleading template may provide sufficient information to satisfy <u>Twombly/Iqbal</u>, such information may not necessarily be sufficient, depending on the particular facts. <u>R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission and Processing Sys. Patent Litig.)</u>, 681 F.3d 1323, 1334 n.6 (Fed. Cir. 2012) (citing <u>Twombly</u>, 550 U.S. at 564 n.10). In any case, if the two standards were actually equivalent, as defendant now argues, presumably defendant would be indifferent

to plaintiffs' assertion the <u>Twombly/Iqbal</u> standard applies. Regardless, the salient fact is <u>Twombly/Iqbal</u> dictates direct-infringement pleading standards as of December 1, 2015.

Defendant argues the Form 18 pleading standard should apply despite its abrogation, citing one of the few cases to directly rule on the issue, <u>Hologram USA, Inc. v. Pulse Evolution Corp.</u>, 2016 WL 199417, *2 n.1 (D. Nev. Jan. 15, 2016). The <u>Hologram USA</u> court, following <u>K-Tech</u> and the Advisory Committee note, determined it would follow the "previously existing standards in ruling" and therefore used Form 18. <u>Id.</u>

However, the Court is not persuaded to follow <u>Hologram USA</u> for several reasons. First, the Court is unsatisfied with the abbreviated legal analysis set forth in the case. The <u>Hologram USA</u> court essentially followed <u>K-Tech</u> in order to restate the pleading elements that Form 18 formerly provided. <u>See Hologram USA</u>, 2016 WL 199417 at *3. The <u>Hologram USA</u> court justified its decision by invoking the aforementioned Advisory Committee note briefly in a footnote. <u>Id.</u> at *2 n.3. However, the <u>Hologram USA</u> court seems to have overlooked the import of a critical point:

> <u>Twombly</u> and its progeny addressed the civil pleading standards in a variety of civil contexts, none of which addressed the sufficiency of a complaint alleging patent infringement or causes of action for which there is a sample complaint in the Appendix of Forms to the [Rules].

<u>Id.</u> at *2 (citing <u>R+L Carriers</u>, 681 F.3d at 1333-34) (internal

brackets and quotation marks omitted). With the abrogation of Form 18, so too went the patent infringement exception to the civil pleading requirements set forth in Twombly and Iqbal. As plaintiffs observe, a form that no longer exists can no longer control. Pls.' Reply 10.

The court is also inclined not to follow Hologram USA for policy reasons. Consistent adjudication is a primary concern not only in applying the law in a uniform manner, but also in accurately apprising parties to patent suits of the relevant legal standards. As discussed *supra*, the circuit courts do not have jurisdiction to review "purely procedural" questions in patent law, while the Federal Circuit has thus far opted to apply "circuit law"; that is, apply the Form 18 standard to direct infringement claims, and the Twombly/Iqbal standard to indirect infringement claims. See, e.g., K-Tech, 714 F.3d at 1283. If the Court were to follow Hologram USA as defendant requests, there would be scant legal justification for the ruling, as invoking a nonexistent form is tenuous jurisprudence at best. After all, if the Court follows Form 18 now, should the court then continue the apply it in future patent cases? If not, when should a line be drawn?

Assuming the Court applied Form 18 in the instant case, nearly four months after it was stricken from the Rules, it is unlikely the heretofore inconsistent application of direct infringement pleading requirements would be resolved. Rather, this Court and

others in this district (and elsewhere) would continue to grapple with which standard to apply. The farther from December 1, 2015 this issue arises, the weaker the argument for utilizing the defunct form.

Continuing to use Form 18 post-abrogation only perpetuates the creation of inconsistent case law. As plaintiffs observe, the continuing uncertainty would essentially create a *de facto* Twombly/Iqbal standard, as canny litigants would be obliged to fashion pleadings sufficient to meet both standards. Moreover, the Court notes that it is not bound by the District of Nevada's holding in Hologram USA. Therefore, the Court finds that applying a uniform pleading standard to both direct and indirect infringement claims is the best, most consistent approach.

Defendant argues that by asking the Court to shift the pleading standard after litigation has commenced, plaintiffs are unfairly gaming the system. Def.'s Resp. 32. In support, defendant notes the Supreme Court's Order accompanying the transmittal of the amended Rules, which states the amendments "shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Def.'s Resp. 33. While carving out a narrow "unjust and/or not-practicable" exception to the general rule, however, the Supreme Court's Order is more amenable to plaintiffs' position, as it sets forth the general rule that any

Page 11 - OPINION AND ORDER

pending litigation should adopt the amendments whenever practicable.

Defendant contends, however, that should the Court decide to apply the amended Rules in the instant case, it would "work an injustice." Fed. R. Civ. P. 86(a)(2)(B). Defendant identifies two such injustices. First, applying the Twombly/Iqbal standard is unfair because defendant's request for leave and proposed amendment was filed before the new Rules took effect. Def.'s Resp. 33. Although the amended complaint relates back to the date of the original pleading pursuant to Fed. R. Civ. P. 15(c)(1)(B), that fact is not dispositive. The rationale behind Rule 15 is fair apprisal of the relevant rules.

Here, there is no question defendant was apprised of the inadequacy of its original direct non-infringement counterclaim. The Court previously admonished: "defendant's pleading barely satisfied Form 18 standards . . . [the Court] encourages defendant, should it seek to amend, to plead clear and particularized facts within the individual counterclaim sections." O&O at *6-7 n.3. However, rather than provide the additional detail, defendant again submitted a non-infringement counterclaim absent the clear and particularized facts requested. See Def.'s Sec. Am. Ans. ¶¶ 105, 107.

Thus, given defendant knew (or should have known) about the imminent amendments to the Rules, and given the Court's prior

request to include particularized facts in any amended answer, the Court finds abandoning the Form 18 pleading standard at this juncture is not unjust, unfair, or unexpected.

Finally, defendant argues it is unjust to apply the new pleading standard to the non-infringement counterclaim while allowing the plaintiffs to plead the original infringement claim according to Form 18. Def.'s Resp. 33. However, this argument is unavailing, as defendant has neither alleged plaintiffs failed to state a claim for direct or indirect infringement, nor has the Court ruled whether plaintiffs' pleadings are legally sufficient. Should the court affirm the legitimacy of defendant's pleadings on this basis, the Court would therefore implicitly rule plaintiffs' allegations necessarily satisfy Rule 12(b)(6). By so doing, the Court could find itself in a difficult position should defendant move to dismiss plaintiffs infringement claims for failure to state a claim.

Accordingly, for all the foregoing reasons, Form 18 is no longer on the table; the Court will apply the Twombly/Iqbal pleading standard to all subsequent pleadings in this matter, inclusive.

II. Defendant's Counterclaims

A. Non-Infringement

Plaintiffs seek dismissal of defendant's non-infringement counterclaim pursuant to Rule 12(b)(6). As explained supra,

defendant's instant non-infringement counterclaim is nearly identical to defendant's previous indirect non-infringement counterclaim which the Court dismissed. Defendant concedes as much, stating, "the changes to [defendant's] non-infringement counterclaim were modest and limited to paragraphs 105 and 107[.]" Def.'s Resp. 30. In light of the abrogation of Rule 84 and Form 18, abandoning any distinction between direct and indirect non-infringement does not conform defendant's previously insufficient pleadings to the requirements set forth in Twombly and Iqbal.

As before, the Court finds defendant has not alleged sufficient facts that when taken as true, support a reasonable inference defendant did not sell or offer to sell a product that had no substantial non-infringing use. Defendant's non-infringement counterclaim again leaves the Court to guess which facts support its claim for relief, as detailed factual allegations remain absent from the pleading. See Def.'s Sec. Am. Ans. ¶¶ 105, 107. Thus, plaintiffs' motion to dismiss defendant's non-infringement counterclaim is granted.

*B. Invalidity*

Plaintiffs argue defendant's counterclaims of invalidity under 35 U.S.C. §§ 102, 103, and 112 should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For the following reasons, plaintiffs' motion is denied.

*1. 35 U.S.C. § 102 - Novelty*

Defendant contends plaintiffs' '386 and '440 patents are invalid under 35 U.S.C. § 102. Def.'s Sec. Am. Ans. ¶¶ 109-121. Section 102 requires novelty as a condition of patentability, and therefore precludes patent protection for an "invention . . . patented or described in a printed publication . . . or in public use or on sale . . . more than one year prior to the date of the [patent] application[.]" 35 U.S.C. § 102(b) (pre-AIA [America Invents Act]). Defendant alleges plaintiffs made public use of and/or placed on sale the Patents-In-Suit more than one year prior to the relevant effective application dates. Def.'s Sec. Am. Ans. ¶ 113; Def.'s Resp. 7. Specifically, defendant alleges plaintiff Daniel Tanner ["Tanner"] and/or plaintiff Tannerite Sports LLC ["Tannerite LLC"] "developed, used, and sold . . . a binary exploding target known as Tannerite[,]"[3] before August 20, 2000. Def.'s Resp. 7.

Plaintiffs contend defendant's amended counterclaim should be dismissed for the same reason the initial counterclaim was dismissed: lack of a sufficient factual basis. Pl.'s Mot. 10; O&O at *8-9. Previously, the Court ruled defendant failed to plead

---

[3] The term "binary" refers to the characteristic of the Patents-In-Suit of storing two chemicals, an oxidizer and a catalyst, in two separate containers for safe storage and transportation, which, when combined by a user, produces a mixture that will explode when impacted by a center-fire rifle round. Thus, a binary target may also be referred to as a "user-mixed target," but not a "premixed" target, because a "premixed" target is not packaged in separate containers. See Pl.'s Mot. 11 n.4.

facts sufficient to support more than a "mere possibility that the 'binary' targets were offered for sale prior to August 1, 2000." O&O at *9. Essentially, the Court determined defendant failed to plead facts sufficient to plausibly conclude a June 2000 advertisement in *Shotgun News* advertised plaintiffs' patented binary (use-mixed), rather than non-binary (premixed), exploding targets. Id. at *8; see also, Def.'s Sec. Am. Ans., Ex. D (*Shotgun News*, July 19, 2000 at *126). The Court also determined defendant failed to plead facts sufficient to link the patented binary exploding targets to the "Tannerite" trademark application filed in 1996. See Def.'s Sec. Am. Ans., Ex. C. The Court finds defendant has now alleged sufficient facts to bridge the gap "between possibility and plausibility" in asserting its invalidity counterclaims. See Iqbal, 556 U.S. at 678.

As a threshold matter, the parties agree both Patents-In-Suit are reissues of the '366 patent, and both rely on the '366 patent's effective filing date of August 20, 2001. Def.'s First Am. Answer ¶ 91; Pls.' Answer to Am. Counterclaims 2. The primary issue is plaintiffs' contention that it publicly used and/or sold non-binary exploding targets prior to 2001, whereas its patented binary exploding targets were not publicly used and/or sold until less than one year prior to the effective filing date.

Attached to plaintiffs' Reply is Exhibit A, a declaration by Mr. Tanner. ("Tanner Decl."), which includes a copy of his response to an office action of the United States Patent and Trademark

Page 16 – OPINION AND ORDER

Office ("PTO") regarding the Patents-In-Suit. <u>See</u> Tanner Decl. The exhibit contains a number of documents which, if taken at face value, suggest plaintiffs' patented binary exploding targets were in public use and/or for sale prior to August 20, 2000. However, in each instance, Mr. Tanner avers he was either engaging in "puffery" in order to market his product, or that his references to "Tannerite" and/or "targets" refer to a different non-binary, pre-mixed exploding target product.

For example, Mr. Tanner explains, "I completely made up a story of how I sold my first binary targets to a cop out of state 'over a decade ago.' But I did not have binary targets at the time." <u>Id.</u> ¶ 9. Mr. Tanner maintains his story was an example of puffery, made so "people would be less likely to have concerns about my invention if they thought that the product was on the market for a long time." <u>Id.</u> ¶ 7. The Tanner Declaration contains a number of other examples of alleged puffery, including statements made to a newspaper, advertisements, and various emails to potential clients. <u>See</u> <u>id.</u> ¶¶ 8, 9, 10, 12, 13, 15.

In one notable example, in a response to a motion to dismiss concerning another case in this very district, Mr. Tanner stated, "the target cannot cause fires, and has a record of not doing so for 20 years." <u>Id.</u> ¶ 14. Tanner infers this September 25, 2014 statement relates to his "old premixed targets, the predecessors to my binary targets[.]" <u>Id.</u> However, the Court takes judicial notice of the original complaint in the case, wherein Mr. Tanner described

Page 17 – OPINION AND ORDER

his product as a "target device [which] contains two inert substances that when mixed by the user, enables the device to break apart with a loud sound, and expel a cloud of water vapor . . . when the target is struck by a rifle bullet." See Daniel J. Tanner v. Vicki Hightower, et al., Case No. 6:14-cv-01035-TC, Complaint ¶ 2 (doc. 1). Thus, Mr. Tanner's complaint appears to describe binary targets, rather than any predecessor premixed target. As such, one could infer Mr. Tanner either was misrepresenting the length of time his binary targets had been in use to the federal district court in his 2014 complaint, or that he is now misrepresenting the type of target discussed in the case to the PTO.

Defendant now pleads a number of facts which cast doubt on plaintiffs' contentions regarding the advertisement in *Shotgun News*. First, defendant has proffered a March 2001 version of Mr. Tanner's prior business homepage, www.skylightexplosives.com. See Def.'s Reply to Pls.' Opposition to Mot. For Leave to File Sec. Am. Ans., Exs. 1, 2 (doc. 52). The website advertises, "New! Tannerite Exploding Targets! Featured in Shotgun News (CLICK HERE!)." Id., Ex. 2. The accompanying hyperlink connects to another page, which includes the heading: "NEW!!! EXPLODING TARGETS," and also, "PRODUCT DESCRIPTION: Binary Exploding Targets.'" The binary exploding targets are advertised at the same price, "$8.50 per unit," as the targets in the *Shotgun News* advertisement. Id. As such, plaintiffs early website uses language similar to that in the *Shotgun News* advertisement, offers the same price, and directly

Page 18 - OPINION AND ORDER

links the advertisement to selling binary exploding targets. These connections suggest the *Shotgun News* advertisement referred to binary exploding targets, at least in part. Accordingly, that the *Shotgun News* advertisement referred to binary exploding targets is at least plausible.

Mr. Tanner contends the advertisement "was clearly for pre-mixed targets that I was selling at the time." Tanner Decl. ¶ 17. Mr. Tanner explains the targets were advertised as "restricted for sale to 'Federal firearms dealers (FFL) holders ONLY.'" Id. Additionally, Mr. Tanner notes the advertisement states "SOLD TO FEDERAL EXPLOSIVES LICENSE/HOLDERS AND L.E. DEPARTMENTS ONLY." Id. Mr. Tanner further explains that the federal Explosive Safety Commission may enforce special requirements for selling explosives, in contrast to binary targets. Id. As such, Mr. Tanner asks the Court to infer the targets he was selling in the advertisement were the premixed, as opposed to binary, variety.

However, federal firearms licences ("FFLs") are not the same as federal explosives licenses ("FELs"). Defendant explains,

> [the] only reference to a federal explosives license is at the very bottom and follows a listing of other products . . . including "all types of high explosives from construction powder to law enforcement specialty explosives" – products that presumably would require an explosives license. When talking about the exploding rifle targets, by contrast, the advertisement states only that these must be sold to Federal firearms dealers/FFL holders, which is not an explosive license.

Def.'s Resp. 14 (citing Tanner Decl. ¶ 17) (bold and italics omitted). Indeed, the advertisement begins with, "Skylight Company introduces Tannerite Exploding Rifle Targets. Must be sold to Federal firearms dealers/FFL holders ONLY with a few exceptions." In contrast, the bottom of the advertisement states, "We also offer all types of high explosives from construction powder to law enforcement specialty explosives." The subsequent line reads: "SOLD TO FEDERAL EXPLOSIVES LICENSE/HOLDERS AND L.E. DEPARTMENTS ONLY." Thus, the advertisement appears to suggest, or at least allows the inference, the exploding targets could be sold to federal firearms license holders (presumably firearms dealers), but in order to purchase a different product consisting of "high explosives," one would need a higher-level federal explosives license (presumably explosives dealers). As the parties agree the binary target is distinguished from a premixed target because the former is not deemed an explosive under the law and therefore more widely marketable, it therefore stands to reason the targets the *Shotgun News* advertisement refers to are binary.

Defendant provides further support for its position, based on other language in the advertisement. Defendant highlights text purported to be from "distributors and users" of the exploding targets, including the following: "I started selling them by the case out of my retail gun store once word caught on." Defendant maintains the premixed exploding targets would not be sold out of a retail gun store, as a customer not in possession of a federal

Page 20 - OPINION AND ORDER

explosives license could not lawfully purchase the premixed explosive or transport it out of the store. Def.'s Resp. 14.[4]

In the October O&O, the Court stated, "viewing the facts in the light most favorable to defendant, the Court is persuaded by the reasonable explanation that the June 2000 advertisement in "Shotgun News" referred to premixed targets, rather than the binary, user-mixed targets at issue in this case." O&O at *14. However, in light of the additional facts presented by defendant regarding various aspects of the advertisement, which the court assumes are true for the purposes of this motion, and also in light of the numerous instances of puffery plaintiffs have disclosed in their reply brief, the court now believes its previous finding was premature.

Viewing the new facts in the light most favorable to defendant, the Court can no longer confidently conclude the *Shotgun News* advertisement referred to premixed targets. Rather, defendant has provided a plausible argument that the advertisement at issue refers, at least in part, to binary exploding targets. As plaintiffs concede, "[a]t most, Mr. Tanner's Declaration and its attachments might be construed to create a question of fact as to

_____

[4] Other factual allegations further support the inference that plaintiffs' binary targets were in public use and/or for sale prior to August 2000. See Def.'s Sec. Am. Ans. ¶¶ 115, 116, 119, 120. Additionally, defendant's contentions regarding inferences of pre-patent application use and/or sale of binary targets in plaintiffs' trademark application are also plausible in light of the new facts. See Def.'s Sec. Am. Ans. ¶¶ 94, 116; id., Ex. C; Def.'s Resp. 12.

the first sale of the patented invention, which would be relevant to the validity of the patents at issue." Pls.' Reply 7. Indeed.

In their original motion, plaintiffs argued defendant had not presented additional facts sufficient to disturb the court's prior finding regarding the relevancy of the *Shotgun News* advertisement. Pls.' Reply 10. Following the presentation of the new facts by the parties, plaintiffs do not provide any substantive rebuttal to defendant's invalidity counterclaim. See Pls.' Reply. Rather, plaintiffs request the Court explicitly review Def.'s Sec. Am. Ans. for compliance with Rules 8, 9, and 12. Pls.' Reply 3.

Defendant's amended counterclaim for invalidity clearly states a plausible claim for relief. The allegations therein constitute more than a bare recitation of the legal elements. Rather, defendant's pleadings allow a plausible inference that plaintiffs are liable for the alleged misconduct. Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 663-64. As such, plaintiffs' motion to dismiss defendant's counterclaim for invalidity under 35 U.S.C. § 102 is denied.

*2. 35 U.S.C. § 103 - Obviousness*

A patent claim is invalid under 35 U.S.C. § 103 if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date, to a person of ordinary skill in the relevant art. 35 U.S.C. § 103. Defendant's original amended answer, which was rejected by the October O&O, merely alleged

Page 22 - OPINION AND ORDER

plaintiffs failed to satisfy "one or more . . . requirements of Title 35, including . . . Section 102, 103 and/or 112." Def.'s First Am. Ans. ¶ 112; see also, O&O at *9-10. Def.'s Sec. Am. Ans. is much more specific, as it sets forth at least six specific examples of alleged violations of § 103. See Def.'s Sec. Am. Ans. ¶ 123.

Portions of defendant's factual allegations regarding § 103 mirror those set forth in the discussion of defendant's § 102 allegations above. This is understandable, however, because a portion of the alleged prior art is the "Tannerite" binary exploding targets alleged to be in public use and/or for sale more than a year prior to plaintiffs' patent application. Def.'s Sec. Am. Ans. ¶ 123. Other alleged prior art includes an article and a number of other patented inventions. See id. ¶¶ 124-28. Plaintiffs acknowledge defendant has provided significantly more detail in the instant counterclaim, but nonetheless argue ¶ 129 should be dismissed because its scope is too broad. Pls.' Mot. 15.

Defendant, in ¶ 129, alleges:

> Other combinations of the above-cited prior art would likewise render one or more claims of the Patents-In-Suit invalid . . . [s]uch combinations include by way of example and without limitation: U.S. Patent No. 4,498,677 (Dapkus) in view of one of the other listed references teaching binary explosives; and the art discussed in either paragraphs 127 or 128 in further view of either the "Ammonal" article or Mr. Tanner's prior use and sales [of] Tannerite.

Def.'s Sec. Am. Ans. ¶ 129. Plaintiffs argue the text "other prior

Page 23 - OPINION AND ORDER

art" renders the paragraph effectively impossible to respond to
based on the sheer number of possible combinations of the prior art
and the numerous individual claims in the relevant patents. Pls.'
Mot. 15-16; Pls.' Reply 9. However, there is no reference to "other
prior art" in ¶ 129. The closest verbiage the paragraph presents is
"other combinations of the above-cited art," or "other listed
references." Def.'s Sec. Am. Ans. ¶ 129. As such, plaintiffs'
argument that the "other prior art" in ¶ 129 makes a response
"impossible," lacks merit. See Pls.' Mot. 17.

Because defendant has limited the scope of the allegation to
"the above-cited prior art" and/or "other listed references," the
Court is satisfied the allegation is not so open-ended as to allow
defendant to continually add heretofore unidentified prior art to
its claim without properly amending the claim. See Pls.' Reply 9.
Indeed, other courts have found substantially similar language
valid. See Helfrech Patent Licensing, LLC v. J.C. Penny Corp., 2012
WL 3776892, at *1, *3 (N. D. Ill. Aug. 28, 2012); Cryolife v. C.R.
Bard, Inc., 2015 WL 1069397, at *4 (D. Del. Mar. 10, 2015).
Further, defendant has provided to plaintiffs a lengthy list of
invalidity contentions and analysis pursuant to the mutually
agreed-upon Patent Local Rules of the U.S. District Court for the
Northern District of California. For all of the foregoing reasons,
plaintiffs' request to strike ¶ 129 is denied.

*3. 35 U.S.C. § 112 - Specification*

Under ¶ 112, patent applications must include a written

Page 24 - OPINION AND ORDER

description of the invention as well as a detailed description of the manner, process, and eventual use of it, such that a person skilled in the particular art would recognize the inventor was in possession of the invention. 35 U.S.C. § 112; PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1306 (Fed. Cir. 2008). Defendant alleges the Patents-In-Suit are invalid due to an insufficient description of the method of transporting plaintiffs' exploding targets in the original August 20, 2001 application.

Specifically, defendant alleges each of the claims of the Patents-In-Suit include information which was later added in an October 17, 2002 continuation-in-part. Def.'s Sec. Am. Ans. ¶ 132. Defendant explains the additional information described the element of transporting the two component chemicals of plaintiffs' exploding targets in separate containers. Id. Therefore, defendant argues, the relevant filing date of the Patents-In-Suit should be October 17, 2002 rather than August 20, 2001. Def.'s Resp. 20-21; see PowerOasis, 522 F.3d at 1306 ("Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed.") (citations omitted).

Plaintiffs contend the transportation of the exploding target containers is not material "new matter" sufficient to affect the priority date. Plaintiffs argue, "implicit in a 'target' is the idea of taking the target to a safe place to shoot it . . . the whole reason for the invention was to enable safe transportation." Pls.' Mot. 18. However, the additional information added to the

Page 25 - OPINION AND ORDER

Patents-In-Suit does not refer only to the transportation of the invention, but also the use of the targets. While "target" presumes it will be shot, the August 21, 2001 application description does not specify that the "targets and catalyst" are to be mixed and then activated by a rifle round at a shooting range. Rather, the only "use" described is: "[s]hipped via UPS from our factory." Def.'s Sec. Am. Ans., Ex. H, *3. Accordingly, defendant has provided sufficient facts such that its § 112 allegation is plausible.

Moreover, because the priority date is also an element of the invalidity claims under §§ 102 & 103, defendant's allegation that it is entitled to a declaration of invalidity "either alone or in light of § 112" is a valid pleading. See Def.'s Sec. Am. Ans. ¶ 134.

In sum, plaintiffs' motion to dismiss defendant's invalidity counterclaims is denied.

C. Inequitable Conduct

Defendant's final counterclaim alleges inequitable conduct. Similar allegations were outlined in the previous counterclaim, which the Court dismissed pursuant to plaintiffs' Rule 12(b)(6) motion. See O&O, *10-15. Defendant alleges Mr. Tanner intentionally failed to disclose to the PTO relevant information regarding the prior use of his invention. Def.'s Sec. Am. Ans. ¶ 138. Plaintiffs contend the court should dismiss the counterclaim, asserting defendant's counterclaim is based merely on failure to disclose,

Page 26 - OPINION AND ORDER

because defendant has not plead sufficient facts to establish a reasonable inference of intent to deceive. Pls.' Mot. 18-27; Pls.' Reply 5-6.

As the Court explained in the prior Order, inequitable conduct is an equitable defense which has the potential to render all claims to a patent unenforceable. See Therasense, Inc. V. Becton, Dickinson, & Co., 649 F.3d 1276, 1285-88 (Fed. Cir. 2011). There are two elements to an inequitable conduct claim: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." Exergen Corp. v. Walmart Stores, Inc., 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009) (citations omitted). Similarly, in order to adequately plead inequitable conduct under Fed. R. Civ. P. 9(b), a litigant must: (1) specifically identify the "who, what, when, where, and how" of the material misrepresentation or omission; and (2) include sufficient underlying facts from which a court may reasonably infer that a specific individual had (a) "knowledge of the withheld material information or of the falsity of the material misrepresentation; and (b) specific intent to deceive the PTO." See id. at 1327.

The additional facts presented by the parties have altered the landscape of this matter, and have made plaintiffs' inequitable conduct claim plausible. As explained above, when construed

Page 27 - OPINION AND ORDER

liberally in favor of defendant, a number of factual allegations support the inference plaintiffs were using, selling, or offering to sell binary exploding targets more than one year prior to August 20, 2001.[5]

Defendant has now also provided sufficient facts to support the who, what, when, where, and how of the alleged material misrepresentation and/or omissions. The "who" in this case is Mr. Tanner. Def.'s Sec. Am. Ans. ¶ 138. Defendant has further alleged the "what, when, where, and how," asserting Mr. Tanner failed to disclose prior use and/or sale of pre-mixed and/or binary targets that explode when shot with a center-fire rifle during processing of his patent application and its subsequent appeal. Id. ¶¶ 96-101, 151-56. Defendant has further alleged Mr. Tanner's omission would have constituted an on-sale bar to claims 23 and 25 of the '386 patent and claims 23 and 25 of the '440 patent, but for his failure to disclose and/or misrepresentations to the PTO. Id. ¶¶ 144, 146, 147; see 35 U.S.C. § 102(b); see also, Star Envirotech, Inc. v. Redline Detection, LLC, 2015 WL 4744394 (C. D. Cal. Jan. 29, 2015).

Additionally, the new facts permit a reasonable inference that Mr. Tanner's omission and/or misrepresentations were made with the

---

[5] Examples include, but are not necessarily limited to: (1) a September 28, 2007 email sent to a journalist indicating sale of a binary target "over a decade before"; an May 13, 2001 email with similar assertions; and an archived website from January 8, 2011 indicating plaintiffs' targets were first shipped "in the 90's." Tanner Decl. ¶¶ 8-13. Again, although plaintiffs attribute the instances to puffery and/or a pre-mixed explosive target, defendant's contrary allegations are nonetheless plausible.

requisite scienter. "[E]vidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the PTO." Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182, 1193 (Fed. Cir. 1993). Here, assuming for purposes of this motion that Mr. Tanner publicly used and/or sold binary exploding targets one year before the effective filing date, he inherently had personal knowledge of the prior art, because at least some of the prior art included his proposed patent. Thus, insofar as the plaintiffs failed to disclose prior use or sale of Tannerite (in binary and/or non-binary form), the requisite scienter may be reasonably inferred.

Further, Mr. Tanner's duty of candor before the PTO would have required him to disclose the prior use of any Tannerite-formula center-fire rifle-activated exploding target when asked by the patent examiner whether he was aware of other prior use or sales. Instead, Mr. Tanner (presumably through his attorney), told the patent examiner he was unaware of any competitor selling exploding targets prior to the effective filing date of the original application having the features of the present claim. Def.'s Sec. Am. Ans. ¶¶ 97, 98. Mr. Tanner also indicated he was unaware of *any* references available prior to October 17, 2002 which teach explodable targets and would be material to the patentability of his claims. Id. Moreover, on appeal, Mr. Tanner indicated he was not aware of any prior art teaching center-fire rifle-activated

Page 29 - OPINION AND ORDER

targets, which would arguably apply to either pre-mixed or binary targets. ¶¶ 100, 101.

Although plaintiffs maintain Mr. Tanner's replies were technically accurate assuming he was aware of no "competitors" other than his own product, the relevant statute hinges on a prospective invention's general "patentability," rather than the narrower category of "known competition." Mr. Tanner arguably knew the binary exploding target patent was affected by his own prior use and/or sale of any form of Tannerite. Both Mr. Tanner and his attorney had the duty to provide such disclosure. See 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty to disclose to the Office all information know to that individual to be material to patentability . . . [t]he duty to disclose information exists with respect to each pending claim . . . . "); see also, Def.'s Sec. Am. Ans. ¶¶ 153-55. Assuming defendant's allegations regarding prior use and/or sale are true, intentional non-disclosure and/or misrepresentation is a reasonable inference.

Plaintiffs implore the court to exercise its gate-keeping function and exclude the instant inequitable conduct counterclaim in order to avoid the corollary problems it can cause. Id. at 20. Indeed, as the court previously noted, inequitable conduct claims are disfavored because, if proven, they can potentially nullify the enforceability of an entire patent, rather than resulting only in dismissal of a suit. Therasense, 649 F.3d at 1287. Plaintiffs

Page 30 - OPINION AND ORDER

further explain that inequitable conduct claims arose from the doctrine of unclean hands, which involved particularly egregious activity such as "bribery, double-perjury, and tampering with evidence." Pls.' Reply 8 (citing Therasense, 649 F.3d at 1285).

Because inequitable conduct claims target the most egregious conduct and carry the greatest consequences, proving an inequitable conduct claim is very high bar. Accordingly, plaintiffs cite both Therasense and this court's October O&O for the proposition that an inequitable conduct claim must be "the single most reasonable inference able to be drawn from the evidence . . . the evidence must be sufficient to require a finding of deceitful intent in the light of all the circumstances." Id. at 1290-91; O&O at *15; see Pls.' Reply 6. Although the inequitable conduct cause of action is disfavored for a number of reasons, it nevertheless remains a recognized cause of action. As such, although the bar may be high, it must still be able to be pleaded.

The Court cannot fault plaintiffs for latching onto the Court's prior assertion that inequitable conduct must be "the single most reasonable inference to explain the non-disclosure" in order to prevail.[6] However, the Court must now clarify that "the single most reasonable inference" refers to defendant's burden for

---

[6] See Pls.' Reply 6 (". . . counterclaims still fail to establish, as the single most reasonable inference . . . .")

proving its case, rather than prevailing at the pleading stage.[7] As one court aptly explains, "[Therasense] discusses the standard for *proving* an inequitable conduct claim. At the pleading stage, [the defendant] need only plead 'sufficient allegations of underlying facts from which a court may reasonably infer' that specific individuals had the intent to deceive." Cypress Semiconductor v. GSI Tech., Inc., available at 2014 WL 988915 (N. D. Cal. March 10, 2014) (quoting Exergen, 575 F.3d at 1328-29). See also Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011); Mentor Graphics v. EVE-USA, Inc., 13 F. Supp. 3d 1116, 1125 (D. Or. April 9, 2014) (recognizing inconsistent application of inequitable conduct pleading requirements and adopting Delano Farms). Accordingly, the Court now follows the well-reasoned analysis set forth by Judge Mosman in Mentor Graphics.

As discussed above, defendant has provided sufficient allegations of the underlying facts, that viewed in the light most favorable to defendant, allow the reasonable inference Mr. Tanner (1) knew of the withheld material information and/or falsity of the

---

[7] The Court anticipates plaintiffs may wish to invoke the "law of the case" regarding the pleading standard for inequitable conduct based on the previous order. The option is not viable for two reasons. First, the October O&O granting plaintiffs' motion to dismiss the inequitable conduct claim was not premised on the passage above. Rather, the court's decision was predominantly based on the lack of facts linking the *Shotgun News* advertisement to binary exploding targets. As discussed at length above, defendant has remedied that issue. Second, the law of the case may not apply in circumstances where, as here, the previous disposition was clearly erroneous and would work a manifest injustice. Jeffries v. Wood, 75 F.3d 491, 493 (9th Cir. 1996).

Page 32 – OPINION AND ORDER

material misrepresentation, and (2) withheld such information intentionally to deceive the PTO. Def.'s Sec. Am. Ans. ¶¶ 96-101, 139-161. Thus, defendant has adequately pleaded inequitable conduct. Plaintiffs' motion is denied.

III. <u>Defendant's Affirmative Defenses</u>

Plaintiffs argue defendant's affirmative defenses of non-infringement, invalidity, and estoppel are insufficient and must therefore be dismissed. The Ninth Circuit has yet to address whether the <u>Twombly/Iqbal</u> standard applies to affirmative defenses, and cases within the circuit are split. Recently, Judges Acosta and Simon examined the issue and articulated the following rationale:

> An answer must "state in short and plain terms" the defenses to each claim asserted against defendant in order to provide plaintiffs with fair notice of the defense(s), Fed. R. Civ. P. 8(b)(1)(A). Under Federal Rule of Civil Procedure 8(c), an "affirmative defense is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiffs claim are proven." <u>Barnes v. AT & T Pension Benefit Plan-Nonbargained Program</u>, 718 F. Supp. 2d 1167, 1171-72 (N. D. Cal. 2010) (citation and quotations omitted). An insufficiently pleaded defense fails to comply with Rule 8 pleading requirements by not providing "plaintiff [with] fair notice of the nature of the defense" and the grounds upon which it rests. <u>Wyshak v. City Nat'l Bank</u>, 607 F.2d 824, 827 (9th Cir. 1979)
> Rule 12(f) provides that a court may, on its own or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A defense may be insufficient "as a matter of

> pleading or as a matter of substance."
> Security People, Inc. v. Classic Woodworking,
> LLC, 2005 WL 645592, at *1 (N. D. Cal. Mar. 4,
> 2005). "A showing of prejudice is not required
> to strike an 'insufficient' portion of the
> pleading as opposed to 'redundant, immaterial,
> impertinent, or scandalous matter' under Rule
> 12(f)." Bottoni v. Sallie Mae, Inc., 2011 WL
> 3678878, at *2 (N. D. Cal. Aug. 22, 2011).

Hayden v. U.S., — F. Supp. 3d —, 2015 WL 350665, at *6 (D. Or. Jan. 26, 2015).

While the Court generally agrees with the standard set forth above, the Court nonetheless finds it unnecessary to require defendant to once again recite each of its factual allegations regarding non-infringement, invalidity, and prosecution history estoppel (inequitable conduct), as they are contained and ascertainable in the same document. There can be little doubt that given the extensive pleadings and briefing that plaintiffs are well aware of the nature of defendant's defenses and the grounds upon which they rest. Indeed, other courts evaluating patent-case pleadings have noted that where the heightened pleading requirements of Rule 9(b) apply to both a defendant's counterclaim and affirmative defenses, the counterclaim and affirmative defense "rise or fall together."[8] See Senju Pharm. Co., Ltd. v. Apotex,

---

[8] The Senju court allowed a defendant's inequitable conduct claim and affirmative defense to "rise and fall together," but ruled the invalidity claims were subject to a different standard, as they were properly plead pursuant to Form 18, while the affirmative defense was subject to the heightened pleading standard and therefore "fell." Because this court finds the invalidity counterclaim meets the heightened pleading standard,

Page 34 - OPINION AND ORDER

Inc., 921 F. Supp. 2d 297, 306 (D. Del. Feb. 6, 2013) (citations omitted).

Because the Court grants plaintiffs' motion to dismiss defendant's non-infringement counterclaims for failure to satisfy the pleading standard under Twombly/Iqbal, it follows that defendant's non-infringement affirmative defense, which includes fewer assertions of fact than the counterclaim, necessarily does not meet the Twombly/Iqbal standard. Accordingly, plaintiffs motion to dismiss defendant's non-infringement affirmative defense is granted.

Similarly, as the Court has concluded defendant's invalidity counterclaim meets the requisite pleading requirements, the Court will allow defendant's Second Affirmative Defense to stand as pleaded, as the bases for the defense are identical to the bases for the plausible invalidity counterclaim, and are readily ascertainable in defendant's pleadings. Plaintiffs are unequivocally on notice of defendant's invalidity defense and the grounds upon which it rests.

Defendant's Third Affirmative Defense is that defendant's claims "are barred by the doctrine of estoppel, including, but not limited to, the doctrine of prosecution history estoppel" arising

---

however, it stands to reason that the affirmative defense also "rises," as both involve virtually identical allegations of fact. Therefore, with the abrogation of Form 18, the reasoning in Senju applies equally to counterclaims and affirmative defenses of both invalidity and inequitable conduct claims.

from plaintiffs' conduct before the PTO. Def.'s Sec. Am. Ans. ¶ 76. Plaintiffs argue the Third Affirmative Defense contains two distinct issues: the doctrines of equitable estoppel and prosecution history estoppel. Pls.' Mot. 29. Defendant's response, however, addresses only the doctrine of prosecution history estoppel. Def.'s Resp. 34-35. Accordingly, the court finds defendant's Third Affirmative Defense refers only to prosecution history estoppel, and requires defendant to narrow the scope of the affirmative defense pleading accordingly. Alternatively, if defendant wishes to assert a distinct affirmative defense of estoppel, it may do so, though the court advises defendant to do so with adequate specificity.

The Federal Circuit applies prosecution history estoppel when "an applicant during patent prosecution narrows a claim to avoid prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable . . . [e]stoppel then bars the applicant from later invoking the doctrine of equivalents to recapture the surrendered ground." EMD Millipore Corp. v. AllPure Techs., Inc., 768 F.3d 1196, 1203 (Fed. Cir. 2014) (internal citations and quotation marks omitted). Plaintiffs argue defendant's affirmative defense fails because it does not identify the relevant narrowed claims. Pls.' Mot. 31. However, as defendant asserts, and plaintiffs do not deny, plaintiffs amended every independent claim of the Patents-In-Suit

Page 36 - OPINION AND ORDER

in order to add that the targets detonate only when impacted by a center-fire rifle round.

Further, plaintiffs have raised the doctrine of equivalents in their infringement claims. See Pls.' First Am. Compl. ¶¶ 51, 64. Prosecution history estoppel is a recognized affirmative defense for parties accused of infringement under a patent's range of equivalence, as opposed to "literal" infringement. See Deep9 Corp. v. Barnes & Noble, Inc., 772 F. Supp. 2d 1349, 1351 (W. D. Wash. Mar. 28, 2011) (citations omitted). Again, based on the counterclaims asserted and their corresponding affirmative defenses, plaintiffs cannot legitimately contend they lack notice. The third affirmative defense is adequate as pleaded.

Defendant's Fourth Affirmative Defense is plaintiffs' request for injunctive relief is barred because plaintiffs have an adequate remedy in the form of damages. Plaintiffs contend the pleading fails because injunctions are typically granted after a finding of infringement. Essentially, plaintiffs dispute whether damages are an adequate remedy. Clearly plaintiffs have notice that defendant plans to argue its proposed remedy is adequate. Plaintiffs' argument is not persuasive.

Defendant's Fifth Affirmative Defense is the plaintiffs' claims are statutorily limited under 35 U.S.C. §§ 286 and/or 287. Plaintiffs argue Fed. R. Civ. P. 8(c) does not mandate the defense be pleaded, and further argues that the limitation on damages the

Page 37 - OPINION AND ORDER

statutes set forth are not proper affirmative defenses. At this juncture, neither party has presented a persuasive explanation regarding why the defense should stand or be stricken. As such, the Court exercises its discretion to allow the defense to remain until such time as it is convinced otherwise.

Defendant's Sixth Affirmative Defense is that plaintiffs' claims are barred by intervening rights under 35 U.S.C. §§ 252 and 307. Plaintiffs argue section 307 relates only to patents that have been subject to reexamination and therefore does not apply. Defendant appears to abandon its contention relative to § 307 in its response. Accordingly, the portion of the Sixth Affirmative Defense regarding 35 U.S.C. § 307 is stricken.

Plaintiffs agree section 252 generally applies, but argue defendant failed to show defendant made and offered to sell its allegedly infringing products prior to the date the first of the Patents-At-Issue were reissued. Pls.' Mot. 33. There is little doubt plaintiffs are aware of production and sales of defendant's products before July 2013. Accordingly, the court will allow this aspect of the Sixth Affirmative Defense to stand, with the caveat that defendant add the relevant facts to its Sixth Affirmative Defense.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion to dismiss defendant's counterclaims and affirmative defenses, is GRANTED in

Page 38 – OPINION AND ORDER

part and DENIED in part.

Plaintiffs' motion to dismiss defendant's infringement counterclaim (Def.'s Sec. Am. Ans. ¶ 80) and the First Affirmative Defense (Id. ¶ 74) is GRANTED. Plaintiffs' motion to dismiss defendant's invalidity counterclaim (Id. ¶ 81) and Second Affirmative Defense (Id. ¶ 75) is DENIED. Plaintiffs' motion to dismiss defendant's inequitable conduct counterclaim (Id. ¶ 82) and Third Affirmative Defense (Id. ¶ 76) is DENIED. Plaintiff's motion to dismiss the Fourth Affirmative Defense is DENIED. Plaintiff's motion to dismiss the Fifth Affirmative Defense is DENIED. Plaintiff's motion to dismiss the Sixth Affirmative Defense is GRANTED in regard to 35 U.S.C. § 307, and DENIED in regard to 35 U.S.C. § 252.

IT IS SO ORDERED.

DATED this 2ND day of May 2016.

_____
Ann Aiken
United States District Judge